Good afternoon. Thank you to all counsel for joining us this afternoon by video conference for this argument session. The court has four cases set for argument today as set forth on the calendar. We request that all counsel mute your microphone if you are not speaking. And we'll proceed with case number one. Madam Clerk, would you please call the first case for argument? 19-3448 from the Eastern District of Missouri, United States v. Temne Hardaway. Well, hold on. We usually recognize counsel before the argument begins. And Mr. Hogan, we want to thank you for accepting the appointment under the Criminal Justice Act in this case. And you may proceed. Thank you, Your Honor. May it please the court. Your Honor, this is a very interesting case involving the main character, unfortunately for my client, was Gerald Hunter, a romantic relation with Ms. Hardaway. The DEA, St. Louis Police, launched an investigation regarding large-scale narcotic trafficking. It involved several people in the St. Louis area, North County St. Louis and St. Louis City. After extensive investigation, all of the investigation related to St. Louis. They realized that a man by the name of Gerald Hunter turned up on some Title III wiretaps. He was also related to some of the other actors who were actively dealing in narcotics in St. Louis. Well, Mr. Hunter arrived on an airplane from California. While he was here, this was all being surveilled by DEA agents and task force officers. They followed them around until they got to a city of Florissant storage facility, where Mr. Hunter went into a storage locker and came out with two very large duffel bags. The agents, correctly believing those bags must contain either money or narcotics, seized, tried to seize Mr. Hunter. Now, mind you, this was in a large area that was surrounded by barbed wire. The agents seized on him. Mr. Hunter began to run. He was wearing flip-flops and carrying the bags, which weighed approximately 30 pounds apiece or 25 pounds apiece. He kicked off his flip-flops, then tried to run with the bags, then just abandoned the bags and escaped. Despite the fact that there were task force officers and DEA, he got away, Your Honor, and he stayed away. Inside of that bag was over 50 pounds of pure fentanyl. So, needless to say, there was a large manhunt. The St. Louis actors were prosecuted, were charged. Mr. Hunter was on the lam. They knew Mr. Hunter lived in the state of California. That's where he was from. So in their investigation, they discovered some of his other acquaintances, and they discovered my client, Ms. Temda Hardaway. Now, Temda Hardaway, and these facts are not disputed, Your Honor, Temda Hardaway got together with Mr. Hunter, and Mr. Hunter provided her with money. The money he provided her with, she used to buy real estate located in Los Angeles, California. And in the case I quoted, United States v. Ornheimer, they discussed essential conduct elements that they say are the basis of venue as opposed to circumstance elements. Now, these essential conduct elements were taking the money, contacting a real estate agent, drafting up real estate contracting, real estate contract, and purchasing the property. All of the essential conduct elements of money laundering, without question, occurred only in the state of California. And in my brief, I've quoted Cabrales, and the government has rightfully pointed out that Cabrales only deals with money laundering. It doesn't deal with conspiracy to commit money laundering. And as we have argued that nothing in furtherance of Section 956 conspiracy is alleged to have occurred in Missouri, that the generation of drug proceeds is wrongly treated as an element of money laundering, and that there was a failure to recognize that generating proceeds and concealing it are two different activities. The government agrees with that. They say, well, all of the drug activity occurred in St. Louis. And when we had a well, the previous attorney who passed away conducted the suppression hearing, the main witness for the government testified that, look, all of our investigation was here for drug related activities in Missouri. And then when we investigated the money laundering, we just subpoenaed records from California. Your Honor, my the basis of my argument is this. There is a proper money laundering charge. There is a proper drug possession with intent to distribute narcotics charge, but they cannot link. There is no nexus between the generated proceeds from drug related activity in St. Louis. They cannot prove that it was used to purchase the property or those were the monies used to purchase the properties in California. And, Your Honor, they would say, well, how can we prove that? Well, it's very simple. They could have just, say, one Western Union transaction, one business record, anything. Well, there was none of those. The agent, to his credit, testified that, look, when we did the investigation, we investigated what was going on in St. Louis. So, therefore, it must be the St. Louis money. Your Honor, that's conclusory. It's a self-fulfilling prophecy. It's, well, since we did everything here, it must be that. They testified. The fact, Your Honor, that I brought up that story about 50-some-odd pounds of pure fentanyl, there is no question Gerald Hunter is a large-scale drug trafficker. The only investigation they did of him and of his activities were in St. Louis. That doesn't mean he doesn't do it elsewhere. They have the burden to prove some nexus, some connection that this, because it's now a conspiracy, Cabrillas no longer applies because it's a conspiracy. I agree. But, please, they have to link the generated proceeds to the monies being used through business records, through Western Union, through bank transfer, through anything. They don't even have a phone call establishing that. They just know that the monies used were provided by Hunter, and we all agree Hunter is a drug trafficker. Ill-gotten gains were used to purchase the property, but there was no connection to the profits being generated in Missouri, Your Honor. That is my argument. Thank you. Question, Mr. Hogan. Yes. In Ms. Hardaway's plea agreement, part four, entitled facts, page four, top of the page, it says Hardaway conducted financial transactions to purchase property located in Los Angeles for $650,000. Hardaway was aware of the source of the proceeds. The source of the proceeds came from the distribution of fentanyl in the Eastern District of Missouri. Is that an admission that the Hunter money for that property in Los Angeles did, in fact, come from the proceeds of drug distributions in Missouri? Your Honor, that was entered into after she lost her motion hearing disputing it. Ms. Hardaway doesn't know exactly where the money came from. She just knows it came from Gerald Hunter, and she does know it. We would not insult the court's intelligence by saying she thought it came from legitimate purposes. But at the time of our motion hearing, none of that was admitted. We were able to enter a plea of guilty pursuant, but allowing us to still pursue this. She knows that the proceeds were illegally gotten because she knows Mr. Hunter and knows his activities. But she had no direct knowledge of what occurred in St. Louis and how the monies got to her. Well, are you saying that because it's a conditional guilty plea, we cannot consider admissions made in the plea agreement? I'm just giving you my explanation, Your Honor, of how we arrived where we are. I'm not saying that. I see. Well, I'm just concerned if we can consider those admissions, then it seems to run counter to your argument that the source of the money could have been Hunter in a different location. I read that yesterday, Your Honor, and had the same concern and really thought about that and don't have an answer other than many times when you're allowed to. I wanted to take the plea agreement just because I felt it would and it did benefit her greatly as far as sentencing goes. And so sometimes when you do that, you almost have to compromise the rights or the compromise, your argument that you have before the court. Does that make sense? She basically got time served, Your Honor, by pleading guilty. If we would have went to trial and she would have been found guilty, she would have probably served an additional four years in prison. Yeah. And just so I understand what you were attempting to do with the motion, was the idea that you wanted the court to dismiss the case based on lack of venue or would the case have gone to trial on whether the government can prove up that the source came from Missouri? We were looking for a dismissal, Your Honor. All right. Thank you. Seeing no other questions, if you'd like to reserve the balance for rebuttal, you may. Thank you, Your Honor. All right. Why don't you mute your microphone and we'll hear from Ms. Granger. Thank you, Your Honors. Good afternoon. My name is Erin Granger. May it please the court. I represent the United States in the matter before this court today. Your Honor, the court properly found that venue was appropriate in this case and that the court had venue under 1956I. I want to go back to Mr. Hogan's point about the sufficiency of the evidence in this case. That is not before this court. What this court is being asked to decide is whether or not the district court erred in not granting the defendant's motion for judgment or excuse me, motion to dismiss the indictment in this case. The indictment in this case charged Ms. Hardaway with Mr. Hunter and others known and unknown to the grand jury to engage in a conspiracy to commit money laundering. As this court is aware, the court is not allowed to look at the facts and determine whether or not the government can establish its case beyond a reasonable doubt. A motion to dismiss an indictment is not permissible vehicle for addressing the sufficiency of the government's evidence. That would be more appropriate at a trial and that was not done here. So what the court needs to look at is the indictment. The magistrate judge in this court looked at the indictment. She applied the principles that were articulated in Cabrales, the 8th Circuit cases that were cited, and she found that venue was proper under 1956I. Unlike the Auernheimer case that Mr. Hogan cites, Your Honor, this case is different because this case has its own venue statute. Auernheimer involved a computer fraud case. It was a computer fraud case out of the District of New Jersey where the court was asked whether or not venue was appropriate in New Jersey when none of the acts occurred in New Jersey. They talked about essential elements and they talked about conduct elements. This case is different because in a conspiracy to commit money laundering, venue is proper under 1956I and venue may be brought in a district where it would lie for the completed offense, which would be the substance of money laundering, or in any other district where an act in furtherance of the attempt or conspiracy takes place. That is exactly what we have here. Looking at Cabrales, Your Honor, there was a lot of argument on the motion hearing about Cabrales and Cabrales being a substance of money laundering where the court determined that Cabrales did not have any connection to Missouri and that proper venue lay in Florida. The court specifically in Cabrales noted that Cabrales was not a conspiracy. In fact, there's great language in Cabrales that mentions that if Ms. Cabrales had been charged with that particular conspiracy, had she been involved with those acts, that that might have been a different question. In fact, when you look at the history of Cabrales, Cabrales initially she faced several counts and one of the counts was a conspiracy to commit money laundering. She challenged venue on both. The underlying district court only granted on the substance of money laundering, which is what ultimately went to the Supreme Court, was the consideration of substance of money laundering. Following Cabrales in the question about whether or not where venue would lie in a conspiracy case, in 2001 they enacted the venue statute. And that is what the court correctly applied in this case. The court found that the indictment showed that there was in fact acts that occurred both in the Eastern District of Missouri and the Central District of California. Whether or not Ms. Hardaway knew the proceeds were tainted, whether or not she knew that they were some form of specified unlawful activity, she had a vehicle to challenge that and that would have been by way of trial. She did not do that. She entered a guilty plea. And the guilty plea in this case is conditioned on her motion to dismiss, which was preserved for appeal, Your Honors. And that is why we are here. And the court just needs to look at the indictment. And the court can certainly affirm on any basis in the record. The record and the indictment in this case support the venue in the Eastern District of Missouri. When the court looks at other cases that are cited in the government's brief that follow Cabrillas, it is logical that this case would be in the Eastern District of Missouri. Specifically in United States v. Logan. There, in that case, the court was asked to determine proper venue. That case involved a defendant who was using motorhomes that he had purchased in California. Those motorhomes were then being taken to the Western District of Michigan. They were loaded up with drugs and then they were taken back and proceeds were laundered. That defendant, like Ms. Hardaway, never entered the Western District of Michigan. The court nonetheless found that it was proper because there were acts in furtherance of the conspiracy, the money laundering conspiracy, that took place in the Western District of Michigan. And that is similar to what this court has before it. If the case had gone to trial, what would the government have been required to prove to establish venue? The government would have to prove venue on a preponderance of the evidence. There is actually an instruction under 3.13 of the instructions that discusses that the government has to prove venue if the court found that that was an issue. And the court could have instructed on that. And it would be that there was that some of the activity occurred here. The government in this case, Your Honor, would certainly have to show the specified unlawful activity to show that she is guilty of the conspiracy to commit money laundering. And the government's evidence would have consisted of drug trafficking in the Eastern District of Missouri. The government's evidence would have also consisted, however, of the transfer of the proceeds from that drug trafficking to the Central District of California. So that would have come in and that that certainly would have been something that would have been come came into evidence. But there certainly is an instruction that they could have tried to seek. And that instruction says that the government has to prove more likely than not that it touched the Eastern District of Missouri. And again, we're not at that stage because she entered a guilty plea. So whether or not she believed that proceeds came from drug trapping is really of no moment for this court. The issue before this court is limited to two. First, whether or not the court erred on denying the motion to dismiss the indictment or in the alternative, whether the court abused its discretion in denying the motion for transfer of venue under Rule 21B. All right. Mr. Hogan didn't address transfer, but would you like to speak to that for a minute or two and then we'll hear rebuttal? Yes, Your Honor. As the courts are aware, cases can be transferred to other districts, either based on prejudice or convenience. The defendant in this case sought a transfer under Rule 21B, which is a transfer for convenience. And under Rule 21B, it is the defendant's burden to bear that the venue here would have been so inconvenient and that in the interest of justice, the case should have been transferred. In this case, the magistrate judge heard testimony from a task force officer concerning factual statements about this case and evaluated all of the factors under United States v. Platt. And those Platt factors included the location of the defendant, the witness location, the event location, document location, the disruption, if any, to her business, the expense to the parties, location of counsel, accessibility of trial, and then the docket condition. And the magistrate judge in this case carefully balanced each and every factor and determined that transfer did not favor in the defendants to go to the Central District of California. And specifically, Your Honor, the court made findings as to each of those factors that were raised by the defense. And additionally, Your Honor, I think if the court looks at some of the cases that the government cited, specifically United States v. Green, it's similar to this case where you had a defendant who was charged any district, specifically in the District of Minnesota. He himself had committed a lot of the crime in New York, and the court found that transfer was not appropriate under 21B. And so in this case, Your Honor, the court did not abuse its discretion. The court carefully evaluated all of the factors in this case and did not find that they favored the defendant such that transfer was warranted. If there were transfer, would it have been only as to this defendant? And so she would have, in effect, been severed from the other conspirators? Was that the thrust of the motion? It wasn't, Your Honor. Actually, they did not bring that to the court's attention, but that certainly would have had possibly that effect had her case been insurgent. She would have ultimately been severed. At the time the defendant's case was pending, there was another co-defendant, Ms. Raina Madison, and Mr. Hunter, although he was not apprehended at that time, he was still a defendant joint. So there were other defendants, but she effectively would have been removed and sent to the Central District of California for trial. Is that a factor that the court's allowed to consider in deciding on transfer, whether it would separate conspirators? I think that that may fall under the other considerations that the court can maybe take into account. The court actually did not make that specific finding because that argument was not made. The court concentrated on the event location, which it wasn't so much the location of the money laundering, it was the events as total, which would have been the specified unlawful activity, meaning the drug distribution. Location of counsel was in the Eastern District of Missouri. The document location, those documents were in the Eastern District of Missouri. The defendant herself was confined in the Eastern District of Missouri. And after carefully weighing all of those factors, the court did not abuse its discretion and came to that correct ruling. I'm not sure if I don't see any other questions. I would see the remainder of my time. You may very well. Thank you for your argument. Mr. Hogan, we'll hear from you in rebuttal. Your Honor, the appellant rests. All right. Well, we thank both counsel then for your arguments. The case is submitted and the court will file an opinion in due course. Thank you, Your Honor.